**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **FRANK J. ROBERTS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-0621** |
| **JAMES LEBLANC, WARDEN** | **SECTION "F" (6)** |

**REPORT AND RECOMMENDATION**

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.

Upon review of the entire record, the Magistrate Judge has determined that this matter can be disposed of without an evidentiary hearing. For the reasons which follow, the Magistrate Judge issues this Report and Recommendation in accordance with the applicable law, hereby recommending that the instant application for federal *habeas corpus* relief be **DENIED WITH PREJUDICE.**

## PROCEDURAL HISTORY

On July 3, 2001, the State of Louisiana filed a bill of information charging petitioner, Frank J. Roberts with two counts of theft over $1,000.00, in violation of La. Rev. Stat. § 14:67, and one count of simple burglary of an inhabited dwelling, in violation of La. Rev. Stat. § 14:62.2.[1] The bill was subsequently amended on October 15, 2001 to reduce the count of simple burglary of an inhabited dwelling to one count of possession of stolen property over $500.00, in violation of La. Rev. Stat. § 14:69.[2] Pursuant to a plea bargain, petitioner, through counsel,[3] then pled guilty that day to both counts of theft and to the amended count of possession of stolen property.[4] He was sentenced to ten (10) years on each count, and the sentences were ordered to run concurrently.[5] The trial judge then suspended petitioner's sentences and placed him on active probation for a period of five years, with one year of

---

[1] *See* State Rec. Vol. 1 of 6, Bill of Information dated July 3, 2001. The bill of information also charged several co-defendants.

[2] *See id*. The amended count was handwritten, signed, and dated by Assistant District Attorney Thomas S. Block.

[3] According to Roberts' federal and state habeas petitions, he was represented by Attorneys Harry J. Boyer, Jr. and Frank G. DeSalvo, who were associates in the same firm.

[4] *See* State Rec. Vol. 1 of 6, Acknowledgment and Waiver of Constitutional Rights - Guilty Plea signed October 15, 2001; State Rec. Vol. 2 of 6, Transcript of Proceedings dated October 15, 2001, No. 01-3516, pp. 2-19.

[5] *See* State Rec. Vol. 1 of 6, Transcript of Proceedings dated October 15, 2001, No. 01-3516, p. 16.

home incarceration.[6]

On October 22, 2001, petitioner filed a motion to withdraw his guilty plea, in which he claimed that his trial attorneys' representation of multiple co-defendants resulted in an unconstitutional conflict of interest, rendering his guilty plea involuntary.[7] On October 24, 2001, the court issued an attachment for Roberts' arrest for his failure to appear at a restitution hearing.[8] On October 29, 2001, the Honorable Melvin Zeno, state district judge, found Roberts' motion to withdraw his guilty plea to be deficient as no memorandum was provided with the motion. The court then ordered that the deficiency be corrected by November 12, 2001.[9] On February 6, 2002, a Motion and Order for Hearing to Revoke Probation was filed against Roberts.[10] Roberts filed a memorandum in support of his motion to withdraw guilty plea with the court on February 14, 2002.[11] The state district judge

---

[6] *See id.* pp. 16-17.

[7] *See* State Rec. Vol. 1 of 6, Motion to Withdraw Plea of Guilty, stamp dated October 22, 2001.

[8] *See* State Rec. Vol. 1 of 6, Minute Entry dated October 24, 2001.

[9] *See* State Rec. Vol. 1 of 6, Order by Judge Zeno dated October 29, 2001.

[10] *See* State Rec. Vol. 1 of 6, for a copy of the Motion to Revoke and the Order by Judge Zeno dated February 8, 2002 setting the motion for hearing.

[11] *See* State Rec. Vol. 1 of 6, Memorandum in Support of Motion to Withdraw Guilty Plea signed February 14, 2002, where petitioner claimed his guilty plea was involuntary as his plea was acquired after a threat by the State that defendant's girlfriend, a co-defendant charged in the indictment, would not receive probation.

subsequently denied Roberts' motion to withdraw guilty plea on March 13, 2002.[12] That same day, the trial court revoked petitioner's probation and petitioner began serving his ten year sentences, with credit given for time served.[13]

Petitioner appealed the trial court's denial of his motion to withdraw guilty plea,[14] and on November 26, 2002, the Louisiana Fifth Circuit Court of Appeal dismissed the appeal as untimely and remanded the case back to the trial court to allow Roberts the opportunity to seek reinstatement of his appellate rights.[15]

---

[12] *See* State Rec. Vol. 2 of 6, Transcript of Proceedings dated March 13, 2002, pp. 4-9; State Rec. Vol. 1 of 6, Minute Entry dated March 13, 2002.

[13] *See* Transcript of Proceedings dated March 13, 2002, p. 9, and 49-52, a complete copy of which is attached to Fed. Rec. Doc. 6.

[14] *See* State Rec. Vol. 4 of 6, Motion for Appeal, No. 01-3516, stamp dated March 21, 2002; Original Brief of Defendant / Appellant Frank J. Roberts, No. 02-KA-538, stamp dated August 8, 2002; Brief of the State of Louisiana, Appellee, No. 02-KA-538, stamp dated August 27, 2002.

[15] *See* State Rec. Vol. 2 of 6, *State v. Roberts*, 836 So.2d 710 (La. App. 5 Cir. 2002) (Table). The unpublished opinion is contained in the record. *See* State Rec. Vol. 2 of 6. The Louisiana Fifth Circuit Court of Appeal held that petitioner failed to file a written motion for appeal until March 21, 2002, one day after petitioner's five day period for filing a motion appealing the trial court's ruling had expired. *See id*. At the time petitioner filed his motion for appeal, La. C. Cr. P. art. 914 provided that motions for appeal must have been made "no later than five days after the rendition of the judgment or ruling from which the appeal is taken."

Previously, petitioner filed a *pro se* motion urging the trial court to correct his sentence. *See* State Rec. Vol. 2 of 6, Motion to Correct an Unconstitutional Illegal Sentence And/Or Breach of Plea Agreement, No. 01-3516 stamp dated September 4, 2002. On September 6, 2002, the trial court denied the motion, stating that petitioner's claim should be filed in the trial court of Louisiana's Nineteenth Judicial District. *See* State Rec. Vol. 2 of 6, Order dated September 6, 2002. The court based its order on La. Rev. Stat. Ann.§ 15:571.15, which provides that venue for actions in which a person contests the computation of his sentence(s), discharge, good time dates, or actions concerning parole is properly filed in the parish of East Baton Rouge.

On or about January 14, 2003, petitioner filed, through counsel, an application for post-conviction relief with the state trial court.[16] The claims raised were: 1) Defense counsel's conflict of interest prevented him from providing effective assistance; 2) Defendant's guilty plea should be set aside as involuntary and uninformed due to counsel's conflict of interest; and, 3) trial court failed to advise defendant of his right to separate counsel prior to accepting the guilty plea. On January 22, 2003, the trial court ordered that petitioner supplement his application with a copy of the unpublished appellate opinion rendered by the Louisiana Fifth Circuit Court of Appeal.[17] Then, on February 5, 2003, petitioner made a motion by letter in the trial court which was denied on February 10, 2003 since Roberts still had not provided a copy of his unpublished appellate decision.[18] On February 14, 2003, the trial court issued a ruling, noting that petitioner had supplemented his application with the unpublished appellate opinion but then ordering petitioner to supplement his post-conviction application with the trial transcripts.[19] On February 27, 2003, petitioner

---

[16] *See* State Rec. Vol. 2 of 6, Application for Post Conviction Relief, No. 01-3516 signed January 5, 2003. The stamp date on the application contained in the record is not visible, but a written notation near the stamp date's faded text notes a date of January 14.

[17] *See* State Rec. Vol. 2 of 6, Order dated January 22, 2003. "It is ordered by the court that the [petitioner] supplement his application for post conviction relief by filing into the record a copy of [petitioner's] appellate opinion, *State v. Roberts*, 2002-KA-538 La. App. 5 Cir. 11/26/02." *Id.*

[18] The letter does not appear in the state court records. In its order of February 10, 2003, the trial court refers to petitioner's "motion by letter filed 2/5/2003." State Rec. Vol. 2 of 6, Order dated February 10, 2003.

[19] *See* State Rec. Vol. 2 of 6, Order dated February 14, 2003.

complied with the order and, on March 7, 2003, the trial court denied post-conviction relief.[20] A subsequent request for a Motion to Reconsider Sentence filed on April 28, 2003 was denied by the trial court as repetitive on April 30, 2003.[21] On June 12, 2003, the Louisiana Court of Appeal, Fifth Circuit, denied petitioner's writ seeking review of the trial court's April 30, 2003 ruling. Petitioner then sought relief in Writ No. 2003-KH-1919, filing a "Petition for Mandamus" on July 8, 2003 with the state supreme court. Therein, petitioner alleged that the trial court erred in failing to reconsider his sentence under Louisiana Code of Criminal Procedure Article 881.1. The petition was denied on procedural grounds on July 2, 2004 [22]. On August 5, 2004, petitioner filed what he termed a "Petition for Rehearing" with the state supreme court, which was denied on October 15, 2004.[23]

Meanwhile, petitioner was pursuing an appeal of the trial court's March 7, 2003 denial of post-conviction relief to the Louisiana Fifth Circuit Court of Appeal. On June 10, 2003, the appellate court remanded the case back to the trial court and ordered the trial court

---

[20] *See* State Rec. Vol. 2 of 6 for a copy of this decision.

[21] *See* State Rec. Vol. 2 of 6 for a copy of the trial court's Order.

[22] *See* State Rec. Vol. 6 of 6, for a copy of writ application and denial in Writ No. 03-KH-1919. Petitioner argued that his sentence was "excessive" and exceeded "the "maximum sentence authorized by law". The Louisiana Supreme Court denied relief citing La. C.Cr. P. art. 930.3 and *State ex rel. Melinie v. State*, 665 So.2d 1172 (La. 1/12/96). *See State ex rel. Roberts v. State*, 877 So.2d 130 (July 2, 2004)(Writ No. 2003-KH-1919).

[23] *See* State Rec. Vol. 6 of 6 for a copy of the petition for rehearing. On page 2 of that pleading, Roberts argued that his "illegal, excessive sentence" was a "clear violation of the 5, 6, 8, 14 Amendment of the United States. . . "

to consider petitioner's application for post-conviction as an application for an out of time appeal.[24] On July 11, 2003, the trial court granted petitioner an out of time appeal.[25] Roberts then filed his appeal, on September 2, 2003, with the Louisiana Fifth Circuit Court of Appeal. Therein, he raised the issues that the trial court erred in not advising Roberts that he had the right to separate representation and that the trial court abused its discretion in denying Roberts' motion to withdraw guilty plea based upon counsel's conflict of interest.[26] On December 30, 2003, the appellate court affirmed petitioner's conviction and sentence after finding that Roberts failed to establish an actual conflict of interest.[27]

Petitioner subsequently filed a writ of certiorari with the Louisiana Supreme Court, raising the following claims: 1) the state appellate court exceeded its scope of review when it decided an ineffective assistance of counsel claim not designated in the assignment of errors; 2) the trial court erred in failing to inquire about the joint representation of Roberts and his co-defendant; 3) the trial court abused its discretion in denying Robert's motion to withdraw guilty plea based upon conflict of interest and the court of appeals erred in

---

[24] *See* State Rec. Vol. 2 of 6.

[25] *See* State Rec. Vol. 2 of 6 for a copy of the trial court's decision.

[26] *See* State Rec. Vol. 5 of 6, Brief of Appellant Frank Roberts.

[27] *State v. Roberts*, 864 So.2d 860 (La. App 5th Cir. 2003). A copy of the opinion can be found in State Rec. Vol. 6 of 6.

assuming no conflict existed.[28] On June 18, 2004, the supreme court denied relief.[29]

On February 16, 2005, petitioner signed and filed, *pro se*, the instant federal application for *habeas corpus* relief under 28 U.S.C. § 2254.[30] He asserts four main claims: 1) First, that his 6th Amendment right to post-conviction review of his ineffective assistance of counsel claim was denied when the state appellate court decided the issue without a hearing and without the claim being presented as an assignment of error.[31] 2) Second, petitioner asserts that his right to conflict-free counsel was violated when the trial court failed to advise him of his right to separate counsel, in violation of the Sixth Amendment.[32] 3) Petitioner's third argument contains two sub-parts. First, he asserts that the state appellate

---

[28]*See State v. Roberts,* Writ No. 2004-K-0274 (La. 6/18/04), a copy of which can be found as an attachment to petitioner's federal habeas petition, Fed. Rec. Doc. 1.

[29] *See* Federal Rec. Doc. 1, Attachments to Roberts' petition for writ of habeas corpus for a copy of the Louisiana Supreme Court's June 18, 2004 ruling.

[30] *See* Fed. Rec. Doc. 1. This February 16, 2005, filing date was ascertained via the Court's use of the "mailbox rule." Under this rule, a pleading filed by a prisoner acting *pro se* is considered to be filed on the date it is delivered to prison officials for mailing, rather than the date it is received by the court. *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). Generally, the date a prisoner signs his petition is presumed to be the date he delivered it to prison officials for mailing. *See Colarte v. Leblanc*, 40 F.Supp.2d 816, 817 (E.D. La. 1999) (assumed that petitioner turned his habeas corpus application over to prison officials for delivery to this Court on the date he signed his application); *Magee v. Cain*, 2000 WL 1023423, *4 n.2 (E.D. La. 2000) (inferred that filing date and signature date of habeas petition were the same); *Punch v. State*, 1999 WL 562729, *2 n.3 (E.D. La. 1999) (may reasonably be inferred that prisoner delivered habeas petition to prison officials for mailing on date he signed petition).

[31] *See* Fed. Rec. Doc. 1, "Claims for Relief (1)" at p. 3 of Roberts' memorandum in support of his federal habeas application.

[32] *See* Fed. Rec. Doc. 1, Memorandum at p. 5 .

court erred in holding that no conflict of interest was present when petitioner's attorney/s concurrently represented both petitioner and his co-defendants. Second, petitioner claims that evidence exists within the record to support his contention that his "hesitant" guilty plea was not entered into freely and voluntarily thus the trial court should have allowed him to withdraw his guilty plea.[33] 4) Finally, petitioner argues that the imposition of the three concurrent ten-year sentences violates his right under the Eighth Amendment to be free from constitutionally excessive sentences.[34]

On April 11, 2005, the State filed a response to petitioner's application, alleging that petitioner had failed to exhaust his fourth claim at the state court level.[35] On April 27, 2005, petitioner then filed a traversal to the state's reply.[36] Therein, petitioner argues that he factually presented his excessive sentence claim to the Louisiana Supreme Court in his motion to reconsider filed with the trial court from which he pursued a writ of mandamus, filed with the highest state court.

**EXHAUSTION & PROCEDURAL DEFAULT**

Petitioner's application for relief under 28 U.S.C. § 2254 is governed by the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* Pub.

---

[33] Fed. Rec. Doc. 1, Memorandum at pp. 6-8.

[34] Fed. Rec. Doc. 1, Memorandum at p. 8.

[35] Fed. Rec. Doc. 5.

[36] Fed. Rec. Doc. 6.

L. 104-132, 110 Stat. 1214. Pursuant to 28 U.S.C. § 2254(b)(1) & (c), a petitioner seeking *habeas corpus* relief is required to exhaust available remedies in state court before a federal court can grant *habeas corpus* relief.[37] The AEDPA's exhaustion requirement is satisfied

---

[37] Section 2254(b)(1), (c) provides in full:

> (b)(1) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court *shall not be granted unless* it appears that
>
> (A) the applicant has *exhausted the remedies available in the courts of the State*; or
>
> (B) (I) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> ....
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

*Id.* (emphasis added).

Section 2254 reflects the general federal doctrine of exhaustion that predated the enactment of the AEDPA. In order to invoke federal judicial relief, a petitioner must first adequately exhaust his state court remedies. *See Preiser v. Rodriquez*, 411 U.S. 475, 490-92 (1973); *Ex parte Royall*, 117 U.S. 241, 251 (1886). The principle underlying the exhaustion requirement is one of federal-state "comity." *See Preiser*, 411 U.S. at 490 (The exhaustion requirement exists to "avoid the unnecessary friction between the federal and state court systems that would result if a lower federal court upset a state court conviction without first giving the state court system an opportunity to correct its own constitutional errors.").

The exhaustion doctrine is also designed to protect the role of state courts as enforcers of federal constitutional rights. *See Picard v. Connor*, 404 U.S. 270, 275-78 (1971) (holding that the requirement of fair presentation serves to guard against unnecessary conflict between the state and federal courts, both of whom are bound to protect constitutional rights). In *Duncan v. Walker*, the Supreme Court recognized that the AEDPA's statutory exhaustion requirement, as enacted in §2254(b), ensures that state courts have the first opportunity to fully consider and resolve challenges based on federal law to state court judgments before federal courts may entertain collateral challenges to those judgments. *See* 533 U.S. 167, 178-79 (2001) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). "A rigorously enforced total exhaustion rule [furthermore,] will encourage state prisoners to seek full relief from the state courts, thus giving those courts the first opportunity

when “the substance of a federal habeas claim has been fairly presented to the highest state court.” *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir. 1999) (quoting *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998). Generally, the exhaustion requirement is satisfied only when the grounds urged in a federal petition were previously presented to the state's highest court in a procedurally proper manner. *Dupuy v. Butler*, 837 F. 2d 699, 702 (5th Cir. 1988). A claim presented within a federal application must be the “‘substantial equivalent’ of one presented to the state courts if it is to satisfy the ‘fairly presented’ requirement.” *Whitehead*, 157 F.3d at 387. “Such presentment can take place via direct appeal *or* state habeas proceedings.” *Morris v. Dretke*, 413 F.3d 484, 491 (5th Cir. 2005) (citing *Orman v. Cain*, 228 F.3d 616, 620 (5th Cir. 2000)) (emphasis added).

Petitioner bears the burden of proving exhaustion of state court remedies. *See Matthews v. Evatt*, 105 F.3d 907, 912 (4th Cir. 1997), *cert. denied*, 522 U.S. 833 (1997). His burden is of a dual nature. He must first demonstrate that he has presented to the state courts a claim that is more than “somewhat similar” to the claim he presents in federal court. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982) (holding that a petitioner must provide the federal court with a “fair opportunity” to apply controlling legal principles to the facts bearing on his constitutional claim); *Picard v. Connor*, 404 U.S. 275, 277-78 (1971) (holding that the “substance” of the federal claim must have been “fairly presented to the state courts).

---

to review all claims of constitutional error.” *Rose v. Lundy*, 455 U.S. 509, 518-19 (1982).

Second, he must demonstrate that the legal theories used to support his claim at the state level are the same legal theories he asserts in his federal application. *See Dispensa v. Lynaugh,* 847 F.2d 211, 217 (5th Cir. 1988) ("[The United States Court of Appeals for the Fifth Circuit] has consistently held that a federal habeas petitioner has failed to exhaust his state remedies when he relies on a different legal theory than he did in state court or when he makes the same legal claim to a federal court but supports the claim with factual allegations that he did not make to the state courts.") (footnotes omitted).

A review of the pleadings filed by Roberts with the Louisiana Supreme Court reveals the following:

In Writ No. 2004-K-0271, captioned as a "Petition for Certiorari", Roberts (through counsel) failed to raise any issue with regard to excessive sentence under either state law or federal constitutional law.

In Writ No. 2003-KH-1919, a petition for writ of mandamus, and Roberts only other pleading filed with the Louisiana Supreme Court, Roberts alleged that the trial court erred in failing to reconsider his sentence under La. C.Cr. P. art. 881.1. Although he primarily argued that his sentence exceeded the maximum allowed under "Louisiana sentencing guidelines," he also asserted, in a petition for rehearing, that his "illegal, excessive sentence" violated the "5th, 6th, 8th and 14th Amendment of the United States" (Constitution).[38] The state

[38]See copy of petition for rehearing at p. 2, in State Rec. Vol. 6 of 6.

supreme court denied the writ application, however, ruling that it was too late for Roberts to raise his sentencing errors as La. C. Cr. P. art 930.3 and *State ex rel. Melinie v. State*, 665 So.2d 1172 (La. 1996), barred claims of excessiveness or other sentencing errors from being raised during post-conviction proceedings.[39] Thus, although Roberts raised the excessive sentence claim before the Louisiana Supreme Court, he failed to do so in a procedurally proper manner. *Dupuy*, 837 F. 2d at 702. Accordingly, the State argues that petitioner's excessive sentence claim is barred for failure to exhaust the claim since the claim was never presented to the highest state court in a procedurally proper manner.

The State is technically correct in its reasoning. However, in this case, the highest state court has already ruled that petitioner's excessive sentence claim would be barred for his failure to raise the claim on direct appeal, citing La. C. Cr. P. art 930.3 and *State ex rel. Melinie v. State*, 665 So.2d 1172 (La. 1996).[40] Based upon petitioner's failure to comply with this state procedural rule, it would be futile to send him back to the state courts in an attempt to exhaust this excessive sentence issue through the filing of a state post-conviction application. An issue that was not presented to the state courts and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S. Ct. 1728,

---

[39]See *State ex rel. Roberts v. State*, 877 So.2d 130 (La., 7/2/04)(Writ No. 2003-KH-1919), *reconsideration denied*, 883 So.2d 1054 (La. 10/15/04).

[40]*See State ex rel. Roberts v. State*, 877 So.2d 130.

1734, 144 L. Ed.2d 1 (1999). See also *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) ("A procedural default also occurs when a prisoner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred'," citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 2557 n. 1, 115 L.Ed.2d 640 (1991)). In such a case, petitioner can only escape the procedural bar by showing both"cause" for the default and "prejudice attributed thereto", or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Amos v. Scott* , 61 F.3d 333, 338-39 (5th Cir.), *cert. denied*, 516 U.S. 1005, 116 S. Ct. 557, 133 L. Ed.2d 458 (1995). Roberts fails to make either showing thus his excessive sentence claim is barred from federal review. However, the court will address the merits of his remaining claims.

**Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams[ v. Taylor*, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also Hill*, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

1) **State Appellate Court Exceeded its Authority When Ineffective Assistance Claim Was Reviewed on Appeal**

Roberts first complains that the Louisiana Court of Appeal, Fifth Circuit, exceeded

the scope of its appellate authority when the court addressed the issue of ineffective assistance of counsel, which had not been listed by Roberts' counsel as an assignment of error on appeal. Roberts complains that the appellate court specifically ignored the mandate of Louisiana Code of Criminal Procedure Art. 920, which provides:

> The following matters and no others shall be considered on appeal:
>
> (1) An error designated in the assignment of errors;
>
> and
>
> (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.

First and foremost, the court notes that Roberts' claim that the state appellate court exceeded its review authority under Louisiana Code of Criminal Procedure Art. 920 does not implicate a federal constitutional right. Rather it is a challenge to state law and the manner in which it was applied in his case. A petitioner can obtain federal habeas corpus relief only if he is in custody in violation of the Federal Constitution or laws and treaties of the United States. *See*, 28 U.S.C. §2241(c)(3), and, 28 U.S.C. §2254(a). As the Supreme Court has stated in *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991):

> "We have stated many times that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990); see also *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 874-75, 79 L.Ed.2d 29 (1984). Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to

> deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. S 2241; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975) (per curiam )"(footnote omitted).

Therefore, under *Estelle*, Roberts' claim should be denied for it is not cognizable on federal *habeas* review.

Additionally, a review of the brief filed by Roberts on direct appeal in Writ 03-KA-933 reveals that Roberts factually asserted that a conflict of interest arose with his attorney when his attorney also represented Roberts' fiancee as well as another co-defendant in the same matter. Therein, Roberts contended that he was advised that, unless he pled guilty, his fiancee would not receive probation. Roberts is correct hat he did not specifically list as an assignment of error that his attorney was ineffective for representing him because of this conflict of interest. Instead, Roberts claimed only that the trial court erred when it failed to inquire into the possible conflict of interest arising from the joint representation. The State responded to the issue in the state proceedings by arguing that since joint representation alone was insufficient to establish that Roberts' attorney rendered ineffective assistance without also showing that the actual conflict adversely affected the attorney's performance, the trial court's failure to inquire about the potential conflict of interest was harmless error. The Louisiana Court of Appeal, Fifth Circuit, identified the issue raised by Roberts as whether "[t]he trial court erred in failing to inquire about the joint representation of Frank Roberts and his co-defendants to advise each of their rights to separate representation

pursuant to La. C.Cr. P. art. 517."[41] The court also addressed petitioner's related second claim, which it found overlapped the first, whether "[t]he court abused its discretion in denying Roberts' motion to withdraw his guilty plea, when it was disclosed that a conflict existed between jointly represented co-defendants Roberts and Barrios." In its discussion of whether the trial court erred in denying Roberts' motion to withdraw his guilty plea, the court discussed whether he had received ineffective assistance of counsel during the joint representation. Concluding that he did not, the court then used that decision as a basis for concluding that the trial court had not erred in failing to advise Roberts of a potential conflict of interest nor in denying his motion to withdraw his guilty plea. The court also noted that the issue of ineffective assistance of counsel, while not normally addressed on direct appeal, was allowed to be addressed on appeal under state jurisprudence, if the record contained sufficient evidence to decide the issue and if the issue was properly raised by assignment on appeal. Based upon this observance, the court apparently concluded that the issue of counsel's effectiveness was sufficiently intertwined with Roberts' other claims to be considered as part of the assignment of errors.[42] Although Roberts argues that he would have been entitled to an evidentiary hearing if allowed to pursue the ineffective assistance of counsel issue in post-conviction proceedings, he fails to establish that such an evidentiary

---

[41]*State v. Roberts*, 864 So.2d 860 (La. App 5th Cir. 2003). A copy of the briefs filed by Roberts and the State as well as the appellate opinion can be found as attachments to Roberts' federal habeas application, Fed. Rec. Doc. 1.

[42]*Id.*

hearing was required. Roberts had the opportunity to present evidence regarding the circumstances under which he rendered his guilty plea during his motion to withdraw guilty plea proceeding before the state trial court. The evidence presented there included evidence from which the state courts could also resolve Roberts' not asserted but intertwined claim that his counsel was ineffective. Since the opportunity to present evidence relative to counsel's alleged conflict was given, Roberts does not demonstrate that an additional evidentiary hearing specifically on the issue of ineffective assistance of counsel was required to be held. Further, this court finds no basis in the record to conclude that Roberts was harmed by the state appellate court's interpretation of his assignment of errors. Robert's claim that the appellate court exceeded its authority, which is barred from federal *habeas* review for not implicating a federal constitutional right, is also without merit.

2) **Right to Conflict-free Counsel Violated When Trial Court Failed to Advise Defendant of the Right To Separate Representation**

Roberts argues that his Sixth Amendment right to conflict-free counsel was infringed when the trial court failed to advise him of his right to separate representation as required by Federal Rule Criminal Procedure 44(c). Robert's fails to realize, however, that the Federal Rules of Criminal Procedure are only applicable to the federal courts and do not apply to state court proceedings. *See* Federal Rule Criminal Procedure 1 ("These rules govern the procedure in all criminal proceedings in the United States district courts, the United States courts of appeals, and the Supreme Court of the United States."); *Spry v. Oberhauser*, 361

F. 2d 391 (9th Cir. 1966)(Federal Rules of Criminal Procedure only applicable to federal courts thus no merit to state prisoner's claim that Federal Rule of Criminal Procedure 5(a) was not complied with in state proceedings.)[43]

As previously stated, federal habeas review is limited to a determination of whether the state court conviction was obtained in compliance with federal constitutional law. Thus the question before this court is whether the state trial judge's failure to inquire into a potential conflict of interest *alone* warrants the granting of federal *habeas* relief. In *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the U.S. Supreme Court indicated that it does not.

> "[][N]othing in our precedents suggest that the Sixth Amendment requires state courts themselves to initiate inquiries into the propriety of multiple representation in every case. Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises . . . Absent special circumstances, therefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist.

---

[43]In his state appeal, Roberts argued that La. C. Cr. P. art. 517, which was based upon Fed. R. Cr. P. 44(c), was violated when the trial court failed to inquire into the potential for a conflict of interest to arise due to counsel's multiple representation. Again, a federal *habeas* court does not review issues of state law thus the propriety of the trial court's compliance with La. C. Cr. P. art. 517 is of no moment to this court. However, the state appellate court reviewing the issue found that, absent a showing by defendant that "an actual conflict of interest existed which adversely affected his counsel's performance", petitioner could not prevail. *State v. Roberts*, 864 So.2d 860 , 864 (La. App 5th Cir. 2003). The court went on to find that Roberts had failed to meet his burden. The *Roberts* court also noted that its ruling was in accord with current U.S. Fifth Circuit precedent as set forth in *United States v. Salado*, 339 F.3d 285 (5th Cir. 2003)(finding that the federal district court's failure to comply with Fed. R. Cr. P. 44(c) did not, by itself, entitle a defendant to relief. Under *Salado*, a defendant must demonstrate that an actual conflict adversely affected his counsel's performance.)

> . . . An attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of trial."

*Cuyler*, 446 U.S. at 346-47, 100 S.Ct. 1717. In this case, neither Roberts, his lawyers nor any of his co-defendants ever voiced an objection to the multiple representation. Moreover, during the proceedings wherein Roberts entered his guilty plea, Roberts indicated that he was aware he had the right to be represented by counsel of his choice, and that he was entirely satisfied with the way his attorney had handled his case. Roberts also was asked by the trial judge whether he had been forced, coerced, or threatened to enter his guilty plea. Roberts indicated that he was not.[44] Although Roberts has argued that the transcript indicates that he was reluctant in rendering his plea, this argument is based upon a question which Roberts asked the court relative to the time within which he had the right to appeal. No concern or objection was ever raised relative to counsel's representation or a potential conflict of interest in that representation.[45]

"In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 348-49, 100 S.Ct. at 1718. Furthermore, ". . .a defendant who shows that a conflict of interest actually affected the adequacy of his

---

[44]See Transcript of proceedings dated October 15, 2001 at p. 10.

[45]See Transcript of proceedings dated October 15, 2001 at pp. 10-11.

representation need not demonstrate prejudice in order to obtain relief." *Id.* at 349-50, 100 S.Ct. at 1719. Roberts fails to make a showing of an actual conflict of interest which adversely affected his guilty plea. The bill of information originally filed on July 3, 2001 charged Roberts with simple burglary of an inhabited dwelling, which carried a maximum sentence exposure of twelve (12) years. He was also charged with two counts of theft over $1,0000, which carried a maximum sentence exposure of ten (10) years. In return for his plea of guilty, however, the charge of simple burglary of an inhabited dwelling was amended to possession of stolen property valued at over $500.00, which carried a maximum sentence exposure of ten years. In return for Roberts' plea of guilty, Roberts' counsel negotiated a jail term of ten years, with the court agreeing to suspend that sentence and place Roberts on five years active probation.[46] At the guilty plea proceeding, the sentencing judge also required one year to be served in home incarceration. This plea bargain represented a substantial benefit to Roberts compared to the twelve year term of hard labor that Roberts ultimately could have served at hard labor. Roberts is hard-pressed to establish that any attorney conflict affected his guilty plea negotiations in an adverse manner, thus he cannot establish that the trial judge's failure to inquire into the potential conflict of interest was prejudicial.[47]

---

[46]See Acknowledgment and Waiver of Constitutional Rights - Guilty Plea form, State Rec. Vol. 6 of 6. Although Roberts subsequently began serving a ten year sentence, it was due to his failure to comply with the conditions of his probation, resulting in the probation being provoked.

[47]Roberts speculates that if the case had not been resolved through guilty pleas, co-defendant Klegin may have been called upon to testify against him (Roberts), which would have

Moreover, the state court's decision to deny Roberts relief on this claim was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." See 28 U.S.C. § 2254(d)(1). The state court ruling was consistent with the holding of *Cuyler*, 446 U.S. at 348-49, 100 S.Ct. at 1718, the applicable U.S. Supreme Court precedent. This claim is without merit.

3) **State Appellate Court Erred in Finding No Conflict of Interest and in Denying Motion to Withdraw Guilty Plea as the Evidence Was Sufficient to Support Contention that Roberts' "Hesitant" Guilty Plea was Not Entered into Freely and Voluntarily**

As discussed above, Roberts has failed to establish that an actual conflict existed due to his attorneys' multiple representation. When addressing this issue, the state appellate court made the following findings:

> The record fails to reveal an actual conflict of interest existed in defense counsel's joint representation of defendant and co-defendants. The bill of information shows co-defendant, Tera Barrios, was initially charged with accessory-after-the-fact for concealing and aiding defendant after the commission of a burglary of an inhabited dwelling. The charge was reduced to possession of stolen property valued over $500. Defendant contends his attorney advised him to plead guilty to his detriment and to the benefit of Barrios. Specifically, defendant asserts he was told that Barrios, his fiancee, would not receive

---

been an actual conflict if both Roberts and Klegin were represented by the same attorney. Roberts fails to establish how what speculatively could have happened at trial adversely affected his guilty plea. He also suggests that he would not have pled guilty but for counsel's advice that his guilty plea would favorably influence co-defendant Barrios' chances of getting probation. Considering the benefits received in the plea agreement and the fact that Roberts indicated that he entered his guilty plea free of coercion, *see* Transcript of proceedings dated October 15, 2001 at p. 10, the court does not find this claim persuasive.

> probation unless he pled guilty.
>
> First, defendant failed to prove the allegation that he was induced to plead guilty to his detriment. No testimony was offered at the hearing on the motion to withdraw his guilty pleas to support the allegation that such a threat was made. Additionally, the transcript of his guilty plea shows he denied he was threatened or promised anything in return for his guilty plea.
>
> Second, even assuming the assertion were true, it does not demonstrate an actual conflict of interest. Defense counsel's representation of defendant and Barrios did not prevent him from negotiating a favorable plea bargain for defendant. Defense counsel was successful in obtaining a reduced charge for defendant that did not require mandatory jail time and successfully negotiated a sentence of probation for defendant. Furthermore, there was no allegation of antagonistic defenses between defendant and Barrios and, from the record, we find that their defenses would have been consistent and compatible with each other. Thus, defendant failed to show an actual conflict existed in his counsel's joint representation of him and Barrios.
>
> Regarding the joint representation of defendant and co-defendant, Gary Klegin, the bill of information shows Klegin was charged with simple burglary of an inhabited dwelling unrelated to the charges against defendant. Klegin's burglary was alleged to have occurred with another co-defendant, on a separate day, and at a separate address than the burglary with which defendant was charged. At the hearing, on the motion to withdraw his guilty pleas, defendant claimed Klegin had a different version of facts as to what happened but never elaborated or demonstrated how the different version adversely affected the defense. Again, defendant failed to show antagonistic defenses between him and Klegin.
>
> Thus, defendant failed to meet his burden of proof that an actual conflict existed which adversely affected his counsel's performance . . .

*State v. Roberts*, 864 So.2d at 865-866.

When a defendant's claim is premised solely upon what a conflicted lawyer failed to do on his or her behalf, the defendant must generally establish adverse effect by demonstrating that there was some plausible alternative defense strategy that could have been pursued, but was not, because of the actual conflict. *United States v. Infante*, 404 F.3d 376 (5th Cir. 2005). Roberts fails to point to a more beneficial negotiation strategy that counsel could have employed but failed to employ due to a conflict of interest between his clients.

Finally, Roberts claims that the trial court erred in refusing to allow him to withdraw his guilty plea as it was involuntary when rendered. Roberts asserts that the record shows he was "hesitant" and reluctant at the time he rendered his guilty plea. However, as this court has previously stated, this argument is based upon a question which Roberts asked the state trial court relative to the time within which he had the right to appeal and was not raised relative to his plea being involuntary, coerced or affected by a conflict of interest. Roberts claims that he should be given a hearing on this issue so that he can develop the evidence to support his claim that his plea was involuntary. However, the evidence before this court is sufficient to determine whether his plea was voluntary.

The plea colloquy dated October 15, 2001 has been reviewed by this court. Therein, Roberts was clearly advised by the court of the rights which he was waiving by pleading guilty. Specifically, the following exchange took place:

THE COURT:

Each of you have signed the Acknowledgment and Waiver of Constitutional

Rights Form in these matters in which you indicate that you understand your right to be represented by counsel of your choice; that if you could not afford counsel, one would be appointed to represent you at no cost to you. You further indicate that you're entirely satisfied with the way that your attorney and the Court have handled your cases; that you have not been in any way forced, coerced, or threatened to enter these guilty pleas.

You understand that you have two years to file for post conviction relief, five days to appeal any conviction of (sic) sentence and you understand all the possible legal consequences of pleading guilty and you each wish to enter guilty pleas at this time.

Is that correct, Mr. Roberts?

THE DEFENDANT:

What I don't understand, Your Honor, is you have five days to appeal a conviction like this.

THE COURT:

If you had gone to trial, sir, you would. By virtue of the fact that you're entering a guilty plea you're giving up your rights to those appeals so long as the Court sentences you pursuant to the plea agreement.

THE DEFENDANT:

So there's no way to –

THE COURT:

Do you want to go to trial, Mr. Roberts? That's your right to do that and then you will have all your appeal rights. If you do not wish to enter a guilty plea, that is your decision. What is your desire, sir?

THE DEFENDANT:

I'll enter a guilty plea.

*See* Transcript of Proceedings dated October 15, 2001 at pp. 10-11, State Rec. Vol. 1 0f 6.

The court has also reviewed the transcript of proceedings dated March 13, 2002 wherein Roberts argued his motion to withdraw guilty plea. In that hearing, Roberts requested that the trial court find his guilty plea involuntary and allow him to withdraw his

plea because his plea was influenced by the prosecutor's promise of leniency to co-defendant Barrios, who was Roberts' girlfriend. "[G]uilty pleas made in consideration of lenient treatment as against third parties pose a greater danger of coercion than purely bilateral plea bargaining." *United States v. McElhaney*, 489 F.3d 383 (5th Cir. 2006), *citing United States v. Nuckols*, 606 F.2d 566, 569 (5th Cir.1979). Even so, there is no "intrinsic constitutional infirmity" in promising leniency to a third party in exchange for a guilty plea. *Id*. A prosecutor has discretion to "inform an accused that an implicated third person will be brought to book if he does not plead guilty." *Id.* The prosecutor has a duty of good faith in making such a representation, which duty is satisfied where he has probable cause to believe the third person has committed a crime. *Id*.; *United States v. Diaz*, 733 F.2d 371, 375 (5th Cir.1984). Co-defendant Barrios was properly charged. Roberts makes no showing that the prosecutor in his case did not engage in plea negotiations in good faith.

Under applicable Supreme Court law, "[t]he longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985), *quoting North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970) (citations omitted). Roberts fails to establish that his guilty plea pursuant to a plea bargain with the State did not comply with applicable Supreme Court law. Roberts received a beneficial sentence which required no in-jail time since his ten year sentence was suspended and he was given active probation. The

only reason Roberts actually served hard time was because his probation was revoked. In fact, Roberts spends some time arguing in his memorandum that he should not have had his probation revoked.[48] However, events which occurred *after* Roberts voluntarily agreed to accept the State's plea agreement do not alter the voluntariness of his guilty plea. At the time the plea was accepted, Roberts was properly informed of the consequences of his plea, was receiving a great benefit for his bargain and was ably represented by counsel. He fails to establish that the trial court erred in denying his motion to withdraw guilty plea because he does not show that plea was invalid or involuntary. This claim is also without merit.

Accordingly,

**RECOMMENDATION**

Accordingly, based upon the foregoing, it is hereby recommended that petitioner's application for relief pursuant to Title 28, United States Code, Section 2254 be DENIED.

---

[48]The issue of whether Roberts probation was properly invoked is not before this court nor was the claim ever exhausted in the state courts. Roberts also asserts that he was not aware that he would be given a one year term of home incarceration, another claim not properly before this court. Despite this procedural obstacle, the court notes that the plea colloquy indicates that Roberts was informed by the sentencing court that a one year period of home incarceration would be required for the plea to be offered. In tendering his guilty plea, Roberts accepted this term of the plea agreement along with all the others outlined in the Waiver of Rights Form. *See* Transcript of Proceedings dated October 15, 2001 at p. 9, State Rec. Vol. 1 of 6. Also, contrary to Roberts' assertion that he was unaware of the home incarceration, during Roberts' motion to withdraw guilty plea, counsel for Roberts reported to the court, "The terms of the sentence were precisely what had been agreed to as part of the plea bargain. The issue is not that he did not receive what he had agreed to at that point. . ." Transcript of Proceedings dated March 13, 2002 at p. 8. It is also worth noting that petitioner never had an opportunity to complete one year of home incarceration because he violated the terms of his probation shortly after being sentenced and the one year home detention was no longer applicable.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F. 3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 7th day of March, 2008.

LOUIS MOORE, JR.
United States Magistrate Judge